**ALBANY,**
Feb. 1827.

Otsego
v.
Smithfield.

THE OVERSEERS OF THE POOR OF THE TOWN OF OT-
SEGO *against* THE OVERSEERS OF THE POOR OF THE
TOWN OF SMITHFIELD.

On appeal to the sessions from an order of removal of a pauper, the order is no evidence of the facts it contains; but the respondents are bound to begin *de novo;* and make out their case independent of the order.

A woman, having a settlement, marries a man who has none in this state; she retains her maiden settlement; and, with her children, may be removed to it, if her husband fail to provide for her.

ON certiorari to the general sessions of the peace of the county of *Madison*.

Two justices made an order of removal of *Maria Chadwick* and her children, from the town of *Smithfield*, in the county of *Madison*, to the town of *Otsego*, in the county of *Otsego*. On appeal in behalf of *Otsego* to the general sessions of *Madison*, it was insisted in behalf of *Otsego*, that the overseers of *Smithfield* were bound to begin *de novo*, and sustain the order by evidence ; but the court decided that the order of removal should be received as *prima facie* evidence of the facts contained in it ; and that it was incumbent on the appellants to impeach it.

Proof was accordingly introduced under this decision ; by which it appeared that one *Elisha Chadwick*, having a settlement in *Connecticut*, but not in this state, married *Maria*, the pauper, who had a settlement in the town of *Otsego*. They went to the town of *Smithfield* in 1816, and resided there till the wife, with the children of the marriage, were removed to *Otsego* in 1823. For about 4 weeks before the removal, they had no house ; and the wife and children lived on the charity of the neighbors. *Chadwick* was intemperate ; and provided but badly for his family.

The sessions affirmed the order.

*S. Starkweather*, for the plaintiffs in error, insisted that the respondents should have been required to begin *de novo*, and support the order.

But on the merits, he said, the sessions also erred. The removal of the wife and children was not warrantable. The law will not tolerate the dispersion of families in this way. The husband had not voluntarily separated from, and ceased to provide for his family. (16 *John.* 186.)

ALBANY,
Feb. 1827.

Otsego
v.
Smithfield.

*J. A. Spencer*, contra, cited 13 *East*, 311; 3 *John.* 23; 5 *East*, 114.   16 *John.* 186; 1 *Str.* 683; 1 *Str.* 544.

*Curia, per* SAVAGE, Ch. J.   On the hearing before the sessions, it was decided that the order of the justices was *prima facie* evidence of the facts it contained; and that it was incumbent on the appellants to impeach it.

The practice was so settled in cases of bastardy, in *Sweet* v. *Overseers of Clinton*, (3 *John.* 26,) decided in *February* term, 1808.   The legislature, in 1810, (*sess.* 33, *ch.* 109, *s.* 4,) enacted, that in appeals, as well under the act concerning bastards, as under that relating to the settlement of the poor, the court of sessions should begin *de novo;* and the respondents were required to substantiate the order, before the appellant should be called on to impeach it.   In the revision of 1813, the same provision is found in the act concerning bastards, (1 *R. L.* 310;) but nothing is said as to proceedings under the act concerning the poor.   By the act repealing the acts previous to the revised laws, all acts and parts of acts, which come within the purview or operation of any of the acts called the revised acts, are repealed. (2 *R. L.* 556.)   No provision on this subject, is found among the revised acts; and as the statute of 1810 is not repealed by its title, but only so much as comes within the purview and operation of the revised acts, it remains in force.   Perhaps the legislature thought the full re-enactment of that statute unnecessary.   The decision in *Sweet* v. *Clinton*, related to a case of bastardy.   It may have been thought, that regulating the practice in that case, was a sufficient expression of the legislative will, on the subject of appeals from orders of removal; and as there is a close analogy in the proceedings in both cases, it would be incongruous to establish a different practice for them.   This was so considered in the case of *Knox & Bern*, decided last term.   The judges of the sessions, therefore, erred in considering the order as conclusive, until impeached.

On the main question, I think the court below was right. In 3 *Burn's Justice*, 375 *to* 380, 11*th ed.* the doctrine of

settlement by marriage is discussed with ability; and all the cases he found, when that work was published, are collected. It is well settled, that in case a woman having a settlement, marries a man who also has a settlement, her settlement follows the husband's; but that a woman marrying a husband who has no settlement, does not lose her maiden settlement. Whether it is so suspended during coverture, that she cannot be removed to it, has been much agitated; and the cases do not all agree. When the wife survives the husband, then, without dispute, her former settlement is revived. In several cases, it was adjudged that marriage does not put the woman in a worse condition than she was in before. But in *Stretford & Norton*, it was held that the settlement of the wife was suspended during coverture. The same thing was held in *Shadwell & St. John's Wapping*. This case was alluded to in the catch reported by *Burrow*:

"A woman, having a settlement,
 Married a man with none :
The question was, he being dead,
 If that she had, was gone.
Quoth Sir *John Pratt*, her settlement
 Suspended did remain,
Living the husband ; but him dead,
 It doth revive again."

This case was overruled by that of *St. John's Wapping & St. Botolph's Bishopsgate*. In that case, the wife was sent to her former settlement; the husband being absent on board a man of war. The chief justice stated these propositions: 1. That she had once a settlement at *St. Botolph's ;* 2. That settlement continues till she gains a new one; 3. That she had never gained a new one. The separation of husband and wife, when they are living together, is the only objection to this doctrine. In *St. Michael & Nunny*, (1 *Str.* 544,) it was held, that if the husband was in the parish when the order was made, it would be vicious; and the court would not presume he was absent. In a subsequent case, the court said they would not sup-

pose it to be wrong unless it appeared so. (*Burr. Sett. Cas.* 153.) In the case of *Dunsford & Willsborough Green,* (*Foley's Poor Laws,* 249,) it was held, that sending a woman away from her husband, was no divorce; for the husband, having no settlement, might come to his wife, as well at one place as another. *Blackstone* understands the rule to be, that the wife's settlement is suspended during coverture, if the husband remains in *England;* and is able to maintain her; but in his absence, or after his death, or (perhaps) during his inability, she may be removed to her old settlement. (1 *Bl. Com.* 363.) · In a later case, *The King* v. *Eltham,* (5 *East,* 113,) the wife was removed to her former settlement, with the consent of the husband and wife. In the case of *Sherburne* v. *Norwich,* (16 *John.* 186,) the general doctrine is recognized. Mr. Justice *Platt,* who gave the opinion of the court, says the fact of the husband's inability was not proved; (the contrary was proved in that case;) but if it had been, it would be with great reluctance he would consent that a wife should be removed from her husband, merely because he was unable to maintain her. This was the individual opinion of that learned judge; but not the opinion of the court; as that question was not raised. Opposed to this, stands the opinion of the chief justice of the supreme court of *Connecticut,* in *Newtown* v. *Stratford,* (3 *Con. Rep. N. S.* 602.) The correct principle, he says, is, " that the wife's maiden settlement remains, having never been determined; but only, as it were, suspended during the time that she continued under the power and protection of the husband; and was maintained and supported by him." Until a new settlement is acquired, he says, there is not even a temporary suspension of this right, nor of the enjoyment of it; if the necessities of the feme covert imperiously require it. The separation of husband and wife, upon this principle, he adds, will always be voluntary; or arising from the coercion of his utter inability to support her.

I hope I duly appreciate rights of marriage to the individuals concerned, and to society. But I can see neither reason, propriety, or humanity, in compelling one

**ALBANY,**
Feb. 1827.

Otsego
v.
Smithfield.

town to support paupers, having a settlement in another, merely to accommodate a vagabond, intemperate husband, as in this case, with the society of the wife and children, whom he has, by his misconduct, reduced to pauperism; thus enabling him, perhaps, to add to the number of paupers, and the burthens of the town into which he has happened to stray. It is enough that *Smithfield* is compelled to support one idle, useless member of society, casually thrown upon them; and they ought not to be further aggrieved by supporting those who have a settlement elsewhere within the state.

But there is no evidence in this case, of the maiden settlement, except the order of the justices. That order was received as evidence of the facts it contained. In that particular, the court below erred; and the order of the sessions must be quashed.

Order of sessions quashed.